# IN THE COURT OF APPEALS OF IOWA

No. 22-1982
Filed February 22, 2023

**IN THE INTEREST OF E.U., C.U. and M.U.,**
**Minor Children,**

**F.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Caleb T. Detweiler of Honohan, Epley, Braddock & Brenneman, LLP, Iowa City, for appellant mother.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Six months ago, we affirmed the termination of the mother's parental rights to her two youngest children. *See In re A.U.*, No. 22-0949, 2022 WL 3906725, at *1 (Iowa Ct. App. Aug. 31, 2022). The mother now appeals the termination of her parental rights to the three older children—born in 2012, 2013, and 2015—under Iowa Code section 232.116(1)(f) and (g) (2022). She does not challenge any of the three steps in our termination analysis. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). Instead, the mother claims the State failed to make reasonable efforts at reunification due to its delayed completion of a relative home study under the Interstate Compact on the Placement of Children (ICPC), which she argues "compromised the best interests of the children."[1]

Our opinion in the prior termination proceeding details the onslaught of child abuse investigations and assessments by the Iowa Department of Health and Human Services dating back to 2013, all of which involved the mother's deficient parenting of her five children. *See generally A.U.*, 2022 WL 3906725, at *1–3.[2] To summarize, a child-in-need-of-assistance proceeding was opened in 2016 and closed the next year. *Id.* at *1. But "[d]espite the services provided in the first case the same issues continued to be reported to the department." *Id.* In mid-2019, a second case was started and the three older children were removed. *Id.* A trial

---

[1] We review this claim de novo, while keeping in mind that the "primary interest in termination proceedings is the best interests of the child[ren]." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

[2] This opinion was admitted as an exhibit at the termination for the three oldest children. The exhibits also included the transcript from the termination hearing for the two youngest children and the ensuing juvenile court order.

home placement was approved in late 2019, and the children were returned to parental custody in the spring of 2020 under department supervision. *Id.* at *2.

The same concerns soon reemerged, and the children were again removed in June 2021 and placed with a family friend where they have since remained. *See id.* at *3. After this second removal, the mother began asking for the children to be placed with her aunt in Texas if they could not be returned to her. In response to the mother's request, the juvenile court "authorize[d] an expedited ICPC home study" in its order for modification of disposition and temporary removal. The mother did not respond well to services from then on. *See id.* By January 2022, the department recommended termination as to the two youngest children,[3] but held off on the three oldest children given their shorter period of removal. *See id.* at *3 & n.1.

In April, the mother's counsel emailed caseworker Jill Foens, questioning: "Have you sent the paperwork for the [ICPC] home study?" Foens replied the same day that "it is going to get done by the end of the week." But Foens never completed the referral while she was on the case. Caseworker Paige Breon was assigned to the case in May, after Foens was in a "[s]evere car accident." At the permanency hearing in July, with the referral still not complete, the mother asked for "additional time for reunification or placement of the children with an aunt in Texas." Although the court denied both requests and directed the State to file termination petitions, it ordered the department "to follow up with the ICPC process regarding the aunt in Texas." The State filed its termination petitions in August.

---

[3] That termination hearing was held in March, and the juvenile court entered its termination order in May.

At the termination hearing in October, Breon testified the delay in making the referral was because the department had not received information from the aunt in Texas. The department was also aware the aunt was breaking federal tax law by claiming the children as dependents, and "she was very vague about where the children would live and with whom."

Two weeks after the hearing, but before the juvenile court entered its termination ruling, the ICPC home study was completed by the Texas Department of Family and Protective Services. The report from that agency stated the home study request was closed because the aunt reported that "she is unable to care for mentioned children at this time and will not proceed with home study." While the court's ruling terminating the mother's parental rights found the department made reasonable efforts at reunification, the court did not address her complaints about the ICPC home study. Yet because the referral was made, the study was conducted, and it was denied,[4] the State argues the mother's claim on appeal is moot. We agree.

The only argument the mother makes for reversal is the potential viability of a statutorily preferred placement with her aunt, which she contends the department unreasonably ignored by failing to timely initiate the ICPC home study. But the mother's standing to challenge placement and the statutory preference for relative placement does not survive termination. *See In re L.R.*, No. 22-0803, 2022

---

[4] Setting aside whether these documents are part of the record on appeal since they were filed after the hearing but before the termination ruling, we find they are properly before us because of the State's mootness argument. *See Clarke Cnty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 170 n.3 (Iowa 2015) ("Matters that are technically outside the record may be submitted in order to establish or counter a claim of mootness.").

WL 4361855, at *2 (Iowa Ct. App. Sept. 21, 2022). And the placement she relies on—the aunt in Texas—is no longer an option, thus making her sole claim for relief moot.[5] *See In re D.H.*, 902 N.W.2d 584, 586 (Iowa Ct. App. 2017) ("Ordinarily, an appeal is moot if the 'issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy.'" (citation omitted)). In other words, agreeing with the mother would have "no practical legal effect" because the circumstance she relies on is not a possibility. *See id.*

In any event, assuming the mother preserved a proper reasonable efforts challenge, the department only has to make efforts that are "reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). In our view, the department met that standard.

The mother points out she first requested the authorization of the ICPC referral after re-removal in June 2021. But, at that point, the permanency goal was reunification, which continued through the permanency hearing more than a year later. Exploring the option of placing the children with the aunt in Texas would have only hindered the goal of reunification with the mother in Iowa. *Cf. In re J.W.*, No. 19-0372, 2019 WL 1950009, at *4–5 (Iowa Ct. App. May 1, 2019) (finding that where the permanency goal was reunification when an ICPC study was requested, completing the "study was not a reasonable effort necessary to return [the child] to the home"). Once the permanency goal was changed to termination, the department did look at placement with the aunt, but she was evasive in providing information and vague as to who the children would be residing with in Texas.

---

[5] There are of course exceptions to the mootness doctrine, but those have not been raised or briefed in this appeal.

Based on these circumstances, we conclude the department's failure to submit the referral sooner was not unreasonable under the circumstances.

As to the children's best interests, whether their safety; long term nurturing and growth; and physical, mental, and emotional condition and needs could be met in the aunt's home in Texas was questionable to say the least. *See* Iowa Code § 232.116(2). On the other hand, the children have been placed in the same foster home that shares their same cultural beliefs and language since the last removal, where they have thrived during the proceedings. We accordingly reject the mother's claim that failing to explore the aunt as a placement option during the proceedings compromised the children's best interests.

**AFFIRMED.**